

**ORDERED in the Southern District of Florida on July 23, 2012.**

**Robert A. Mark, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

```
_____
                                )
In re                           )   CASE NO. 08-11165-BKC-RAM
                                )   CHAPTER  7
JET NETWORK, LLC,               )
                                )
          Debtor.               )
_____ )
                                )
ALAN GOLDBERG, Chapter 7        )
Trustee for the Estate of JET   )
NETWORK, LLC,                   )
                                )
          Plaintiff,            )
                                )
vs.                             )   ADV. NO. 10-2701-BKC-RAM-A
                                )
MERRILL LYNCH & CO., INC.,      )
THOMAS JAMES SEGRAVE, and       )
SEGRAVE AVIATION, INC.,         )
etc.,                           )
                                )
          Defendants.           )
_____ )
```

```
                                    )
THOMAS JAMES SEGRAVE and            )
SEGRAVE AVIATION, INC.,             )
                                    )
            Counter-Plaintiffs/     )
            Third-Party             )
            Plaintiffs,             )
                                    )
vs.                                 )
                                    )
ALAN GOLDBERG, Chapter 7            )
Trustee for the Estate of           )
JET NETWORK, LLC,                   )
                                    )
            Counter-Defendant,      )
                                    )
and                                 )
                                    )
STUART J. CAUFF, an                 )
individual, PAUL PARMAR, an         )
individual, and MICHAEL A.          )
KEISTER, an individual,             )
                                    )
            Third-Party             )
            Defendants.             )
_____)
```

### ORDER GRANTING IN PART
### <u>DEFENDANTS' MOTIONS TO COMPEL AND SETTING STATUS CONFERENCE</u>

The Court conducted a hearing on December 5, 2011, on the Segrave Defendants' Motion to Compel Discovery ("Segraves' Motion to Compel") [DE# 228], and on Defendants Merrill Lynch & Co., Inc., and Global Structured Finance & Investments, LLC's Motion to Compel ("Merrill Lynch's Motion to Compel") [DE# 246]. The Court has considered the record, including the two motions and attached exhibits, the Trustee's Response in Opposition to the [Segraves' Motion to Compel] [DE# 243], the Reply in Support of [Segraves' Motion to Compel] [DE# 245], the Trustee's Opposition to [Merrill

Lynch's Motion to Compel] [DE# 255], and [Merrill Lynch's] Reply in Support of Motion to Compel [DE# 260]. The Court also has considered the arguments of counsel presented at the December 5, 2011 hearing, and reviewed applicable law. For the reasons explained more fully below, both motions to compel will be granted in part and denied in part.

## The Parties

The discovery motions before the Court were filed by the two sets of defendants in this adversary proceeding. Segraves' Motion to Compel was filed by Defendants, Segrave Aviation, Inc., and Thomas James Segrave, individually (collectively, "the Segraves"). Merrill Lynch's Motion to Compel was filed on behalf of Defendants, Merrill Lynch & Co., Inc., and Global Structured Finance & Investments, LLC, a/k/a Merrill Lynch Global Structured Finance & Investments ("ML Finance") (collectively "Merrill Lynch"). The Respondent is Plaintiff, Alan Goldberg, Chapter 7 Trustee for the estate of Jet Network, LLC.

## Factual and Procedural Background

This adversary proceeding is pending in the Chapter 7 bankruptcy case of Jet Network, LLC ("Jet Network"). The case was commenced by the filing of an involuntary petition on January 31, 2008. An Order for Relief was entered on February 27, 2008, and the Trustee was appointed on March 4, 2008. Jet Network operated a jet charter business. Stuart Cauff ("Cauff") was one of the

founders and was, at one point, Jet Network's Chief Executive
Officer. Cauff is a significant player in this saga because he is
the Plaintiff (actually third-party plaintiff) in a closely related
lawsuit pending in New Jersey, Case No. MID-L-9700-07, Superior
Court of New Jersey for Middlesex County (the "N.J. Case").
Because the two proceedings are related, and there is an effort to
coordinate discovery, the chronology of both this adversary
proceeding and the N.J. Case are included in this Order.

The N.J. Case was filed prior to the commencement of Jet
Network's bankruptcy case on October 11, 2007 by Paul Parmar, an
individual who loaned money to Jet Network and also held a pledge
of the majority of the ownership interests in the company. The
named defendants were Cauff, Michael A. Keister ("Keister") and
Susan Lewis. On November 12, 2008, Cauff, one of the original
defendants in the N.J. Case, filed a Third-Party Complaint against
ML Finance and the Segraves. The Third-Party Complaint alleges
that ML Finance, the Segraves and others conspired to steal a
confidential and proprietary business plan (the "New Business
Model") that Cauff intended to implement through Jet Network and an
affiliate, Jet First, Inc. ("Jet First"). Cauff was the founder of
both companies and as noted earlier, was the Chief Executive
Officer of Jet Network.

Initially, Cauff was a litigation target of the Trustee.
Specifically, on February 24, 2009, the Trustee initiated an

4

adversary proceeding against various Defendants, captioned *Alan L. Goldberg v. Stuart L. Cauff, et al.*, Adv. No. 09-1212 ("*Trustee v. Cauff*") [DE# 1 in Adv. No. 09-1212].  In *Trustee v. Cauff*, the Trustee sought damages against Cauff and others for alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and the avoidance of transfers and the recovery of estate property alleged to have been fraudulently transferred to such Defendants.

Cauff and the Trustee negotiated a settlement (the "Trustee/Cauff Settlement"), and on November 3, 2009, the Trustee filed a Motion to Approve Settlement Agreement [DE# 213 in Case No. 08-11165], which the Court granted on January 21, 2010 [DE# 216 in Case No. 08-11165].  In the settlement, Cauff agreed to pay the Trustee $50,000 and fifty percent of his net recovery in the N.J. Case, and the Trustee agreed to pay Cauff ten percent of the net recoveries of any action brought by the Trustee against Merrill Lynch and its affiliates with respect to causes of action derived from the Jet Network Bankruptcy Case.  As a result of the Trustee/Cauff Settlement, the Trustee obtained a financial interest in the N.J. Case.

On February 26, 2010, the Trustee filed this adversary proceeding against several Defendants.  As now pled in the Second Amended Complaint (the "Complaint") filed on January 18, 2011 [DE# 142], the Defendants are the Merrill Lynch Defendants and Segrave Defendants.  The Trustee is represented by Steve Silverman, Esq.,

5

the same attorney representing Cauff in the N.J. Case.

In this adversary proceeding, the Trustee seeks damages for aiding and abetting usurpation of a corporate opportunity, conspiracy in usurpation of a corporate opportunity, breach of fiduciary duty, and avoidance of fraudulent transfers. Although the Trustee is the Plaintiff in this proceeding, and Cauff is the Third-party Plaintiff in the N.J. Case, the alleged wrongdoing by the primary Defendants is very similar in both cases.

### Coordination of Discovery
### Here with Discovery in the N.J. Case

Because the two actions are so similar, it made sense to coordinate discovery. To that end, on December 3, 2010, this Court entered its Order Granting Motion for Entry of Case Management Order [DE# 123]. Among other things, that Order provided that discovery of this proceeding would be coordinated with discovery in the N.J. Case to avoid duplication. The Order provided further that any discovery served in the N.J. Case would be deemed served in this proceeding.

Progress in the N.J. Case was delayed when ML Finance, one of the Defendants in that case, filed a Notice of Removal in the United States District Court for the District of New Jersey on February 17, 2011 [DE# 1 in 11-1967]. Following transfer of venue to the Southern District of Florida, and referral of the case to this Court, the case was ultimately remanded back to the New Jersey State Court by Order dated August 1, 2011 [DE# 41]. Remand was

based upon this Court's finding that the Notice of Removal was untimely (<u>Memorandum Opinion and Order Granting Motion to Remand</u> 11-01967, DE# 41).

Now that the case is back in New Jersey, progress has been delayed by the pendency of the discovery motions subject of this Order. This Court apologizes to the parties and the court in the N.J. case for the delay.

### Segraves' Motion to Compel

Segraves' Motion to Compel seeks better answers to [Segraves'] Combined First Set of Interrogatories to the Trustee (the "Segraves' Interrogatories")[1] and production of additional documents in response to [Segraves'] First Request for Production of Documents from Trustee (the "Segraves' Document Request").[2] Rather than addressing each specific interrogatory and document request at issue, this Order will rule on the primary issues in dispute which should provide sufficient guidance to enable the Trustee to provide the appropriate supplemental answers and additional documents required by this Order.

    1.  <u>The Trustee Must Respond to All 35 Interrogatories</u> -

---

[1]  The Segraves' Interrogatories at issue together with the Trustee's Response to each Interrogatory and the Segraves' Objection to the Trustee's Response are contained on pages 10 through 64 of Segraves' Motion to Compel.

[2]  The individual document requests at issue, together with the Trustee's Response and the Segraves' Objection to the Trustee's Response are contained on pages 65 to 106 of Segraves' Motion to Compel.

7

Fed.R.Civ.P. 33(a), applicable here under Fed.R.Bankr.P. 7033, provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." The Trustee argues that the two Segrave Defendants should be treated as one party and thus be limited to 25 interrogatories. In fact, the Trustee only responded to 19 interrogatories, arguing that, with subparts, these 19 interrogatories should be treated as 25 interrogatories. The Segraves argue that James Segrave and Segrave Aviation, Inc., are distinct parties, each entitled to serve 25 interrogatories. The Segraves also argue that the subparts of their interrogatories should not be counted separately, because "they are logically or factually subsumed within and necessary to the primary question," *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006) (citations omitted).

Although perhaps an interesting issue for an advanced civil procedure class, the Court is not going to address these arguments. Even if the two Segrave Defendants arguably should be treated as a single entity, Rule 33 gives the Court discretion to allow additional interrogatories. The Court is exercising that discretion here and granting the Segrave Defendants leave to propound all 35 interrogatories, including subparts.

2.  The Trustee Must Produce the Relevant Merrill Documents – In his Response in Opposition to the [Segraves' Motion to Compel],

8

the Trustee described four categories of documents, two of which he has made available for inspection and two of which remain in dispute.  The two categories produced are the documents the Trustee obtained from Cauff after the *Trustee v. Cauff* adversary was settled, defined by the Trustee as the "Principals' Documents" [DE# 243, p. 4], and documents the Trustee obtained in the N.J. Case, including certain default judgments against non-parties to this adversary proceeding and certain Findings of Fact and Conclusions of Law entered in connection with those judgments, defined by the Trustee as the "New Jersey Litigation Documents" [DE# 243, p. 5].

The two categories in dispute are documents created by a forensic expert retained by Keister, described by the Trustee as the "Non-Testifying Expert's Documents" [DE# 243, p. 5] and the documents culled by counsel for the Trustee, with the assistance of Cauff and Paul Svenson ("Svenson"), from the over one (1) million pages of documents produced in this proceeding by Merrill Lynch. These documents, consisting of about 10 boxes, according to the Trustee's comments at the December 5th hearing, are described by the Trustee as the "Relevant Merrill Lynch Documents" [DE# 243, pp. 5-6].

Treating the expert documents first, the Court sustains the Trustee's objection.  If the Trustee retains this expert to testify at trial, any report relevant to his testimony will be discoverable.  For now, the Trustee need not produce the documents

prepared by Keister's non-testifying expert.

The bigger issue is whether the Trustee must produce the Relevant Merrill Documents.  In response to Segraves' document request, the Trustee has offered to produce the million pages of Merrill Lynch documents for review, but has refused to produce the Relevant Merrill Documents, claiming that production is protected by the work product privilege.

The Court finds that production of the Relevant Merrill Lynch Documents is not protected by the work product privilege.  The Court agrees with the analysis and holding in *Mead Corp. v. Riverwood Natural Resources Corp.*, 145 F.R.D. 512 (D. Minn. 1992). In that case, plaintiff propounded interrogatories asking the defendant to disclose the facts supporting its defenses and requested production of any documents relied upon by defendant in asserting its defenses.  The court rejected defendant's argument that these interrogatories and document requests sought discovery protected by the work product privilege.

Among other things, the *Mead* court focused on the attorney's expectation of privacy.  The court found no expectation of privacy with respect to documents that would ultimately be revealed at trial.  145 F.R.D. at 521.  The court recognized that the "culling" process may, to some extent, reveal the attorney's mental impressions.  The court held, however, that:

> plaintiff is attempting to obtain non-privileged, factual evidentiary material which

10

> forms factual basis for asserting defenses which will be ultimately disclosed. Any insight into counsel's understanding of the case or of defenses is outweighed by contribution to the efficacious operation of the judicial system which expedited disclosure provides.

145 F.R.D. at 521.

There are some cases protecting from disclosure documents that an attorney selects to review with witnesses prior to the witnesses' deposition, most notably *Sporck v. Peil*, 759 F.2d 312, 317-19 (3d Cir. 1985). In *Sporck*, the Third Circuit concluded that "the selection and compilation of documents by counsel ... in preparation for pretrial discovery falls within the highly-protected category of opinion work product." 759 F.2d at 316.

The *Sporck* holding will not be applied here. First, several courts have criticized the reasoning in *Sporck*, including the Court of Appeals for the First Circuit in *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1017-18 (1st Cir. 1988). *See also In re Seroquel Products Liability Litigation*, 2008 WL 215707 (M.D. Fla. Jan. 24, 2008). Second, the facts here are notably different from the facts in *Sporck*. As discussed by the *Mead* court, in selecting documents to prepare one's own witness for deposition, counsel may reasonably expect that the selection process would remain confidential. 145 F.R.D. at 518. That is not the case when a party is asked to provide the facts and documents it relied upon in asserting claims or defenses. *Id*.

11

In sum, the principles applied in *Mead* are applicable here. The Relevant Merrill Lynch Documents are not themselves work product. Whatever mental impressions are embodied in the selection process, getting the relevant documents on the table will facilitate discovery and will not be prejudicial to the Trustee. This proceeding should not be a game of hide the ball. As the Court will discuss in other portions of this Order, the Trustee must reveal now the facts that he has learned from the witnesses he has spoken with, and produce the documents that he has reviewed and deemed relevant to his claims. Once both sides have a set of the relevant documents, the Defendants will have a fuller picture of what the Trustee is relying upon to support his allegations, and a more specific description of what the Trustee believes the key witnesses know. The depositions can then proceed far more efficiently and this proceeding can move towards settlement or trial.

Although the Court is requiring production of the Relevant Merrill Documents, the Court will not require the Trustee to cull particular documents that support particular allegations of the Complaint. To the extent Segraves' Motion to Compel sought to require the Trustee to produce particular documents to support individual allegations, the Motion to Compel is denied.

3.    The Trustee Must Provide Better Answers to the Contention Interrogatories - Several of the interrogatories propounded by

12

Segrave ask the Trustee to provide facts to support various allegations in the Second Amended Complaint. The Trustee has objected to these interrogatories on various grounds, including (1) these are premature contention interrogatories; and (2) the Trustee has no knowledge other than information "based on the attorney-client privileged information and work product obtained by his counsel in this or other litigation, or information that was gathered by his counsel and is protected by the joint defense or common interest privileges." The Trustee has also answered these interrogatories, in part, by referring the Segraves to certain findings and judgments entered in the N.J. Case, contained in the New Jersey Litigation Documents.

The Court will require better answers to the interrogatories. As the Segraves aptly noted in their papers, the Trustee was required to engage in due diligence before filing the Second Amended Complaint. He is now obligated to provide the facts he (or his counsel) have knowledge of to support the allegations. First, referring the Trustee to uncontested default judgments in the N.J. Case is non-responsive. Morever, the "findings" in connection with those judgments do not amplify the Trustee's claims against the Segrave Defendants.

Second, with respect to the attorney-client and work product objections, the Court finds that disclosure of facts supporting the allegations is not disclosure of confidential communications

13

protected by the attorney-client privilege.  The privilege does not protect against the disclosure of relevant facts simply because those facts were revealed to  Trustee's counsel in statements by a related client, for example, Cauff, or statements from third parties obligated to cooperate with the Trustee, like Svenson or Keister. *See Upjohn Company, et al. v. United States, et al.*, 449 U.S. 383, 395-396 (1981).

Simply stated, the Trustee must make a good faith effort to disclose all facts presently known by him, or his attorneys, that support the allegations in the Complaint.[3]  This includes facts learned from conversations with Cauff, Svenson, and Keister, each of whom are obligated to cooperate with the Trustee.

As discussed later in addressing Merrill Lynch's Motion to Compel, the Court will not require the Trustee to conduct further interviews with witnesses to provide better answers.  The key witnesses will be deposed and all parties will have an opportunity to conduct thorough examinations.  To get past this round of paper discovery and position the case for depositions, the Court is

---

[3]  In responding to the Merrill Lynch Motion to Compel, the Trustee withdrew his objection to Merrill Lynch interrogatories which was based on privilege because the information sought was solely within the knowledge of the Trustee's attorneys [DE# 255, p. 2].  It is unclear whether this concession means that the Trustee is now agreeing to produce better answers to the Segraves' Interrogatories, which include all facts presently known by the Trustee's attorneys.  Any ambiguity in the Trustee's concession should be resolved by the rulings in this Order.

simply requiring the Trustee to flesh out the allegations with
facts already known and, as required elsewhere in this Order, to
produce the relevant documents, including those he has culled from
the Merrill Lynch production.

### Merrill Lynch's Motion to Compel

Merrill Lynch filed its Motion to Compel on October 14, 2011,
seeking to compel better answers to its First Set of
Interrogatories to Plaintiff.[4]  The Merrill Lynch Defendants
propounded 46 interrogatories.  Asserting the same arguments raised
to justify answering only a portion of the Segrave interrogatories,
the Trustee only responded to 23 of Merrill Lynch's
interrogatories.  The Rule 33 issue was addressed earlier and the
Court's ruling is the same.  Even if the Merrill Lynch Defendants
are deemed to be a single entity, this Court is granting leave
under Rule 33(a), Fed.R.Civ.P., to allow all 46 interrogatories to
be propounded and all 46 must be answered.

As referenced earlier, in his Opposition to [Merrill Lynch's
Motion to Compel] [DE# 255], the Trustee withdrew that portion of
his objection which was based on an argument that the Trustee's
knowledge was derived from his attorneys and was therefore
privileged.  Based upon this concession, and as stated specifically

---

[4]     The interrogatories subject of the Motion to Compel are
set forth on pages 11 through 35 of Merrill Lynch's
Motion to Compel, together with the Trustee's Answers
and Merrill Lynch's argument in support of compelling a
better answer.

in his Opposition, the Trustee has agreed to provide better answers to Interrogatory No. 3, No. 5, No. 6, No. 13, No. 14, Nos. 17 through 20, and Nos. 22 and 23.

Turning to the remaining disputes, certain issues common to several interrogatories will be addressed without reference to each specific request.  The Order will then reference each interrogatory which is still subject of an objection.

1.  <u>The Trustee Must Provide More Detail Regarding the Knowledge of Identified Witnesses</u> - Interrogatory No. 1 asks the Trustee to identify witnesses stating "the specific nature and substance of the knowledge that you believe [the witness] may have."  To his credit, the Trustee did provide the names, job titles, and addresses (where known) of nineteen (19) individuals. What the Trustee failed to do was describe the nature and substance of the witness' knowledge.  Instead, for key witnesses like Cauff, Paul Parmar, and Michael Keister, the Trustee simply stated in general and unhelpful words that each of these witness "may have knowledge about the claims and allegations made by the Trustee in the second Amended Complaint, including the Defendants' mismanagement, malfeasance, and misfeasance, which directly and proximately caused harm and loss to Jet Network."

These answers are insufficient.  The Court specifically rejects the assertion that "[t]he Trustee has answered what he knows or reasonably believes certain witnesses know" (Trustee's

16

Opposition to [Merrill Lynch Motion to Compel], DE# 255, p. 5).
Trustee's counsel also represents Cauff in the N.J. Case, so he
obviously knows the "nature and substance" of the facts Cauff
knows.  Moreover, Cauff and his adult children, Brandon Cauff and
Abby Cauff, both former Jet Network employees, are obligated to
assist the Trustee as part of the settlement of the *Trustee v.
Cauff* adversary described earlier.  Keister also settled claims
brought against him by the Trustee and is obligated to cooperate.

Morever, to the extent the Trustee is still asserting an
attorney-client or work product privilege, the Court rejects the
Trustee's argument that describing the substance of the witnesses'
knowledge would require disclosure of information protected by the
attorney-client or work-product privilege.

Merrill Lynch argues that the Trustee must also reach out to
Cauff, Keister and Svenson to obtain additional facts responsive to
each of the interrogatories, including additional detail regarding
the nature and substance of their knowledge to better answer
interrogatory No. 1.  There is some support for Merrill Lynch's
argument.  Parties must produce documents or provide information
within the party's "control."  Because Cauff, Keister and Svenson
have the legal obligation to provide information to the Trustee
under their settlements with the estate, Merrill Lynch argues that
the Trustee "controls" the information and should obtain it.  *See*
DE# 260 at p. 4-5.  It's a logical argument but the Court rejects

17

it.   What the Trustee and his attorneys already know must be disclosed.   Facts that the Trustee and his attorneys have not obtained yet can and should be derived from the depositions at which all counsel will have the opportunity to fully examine these witnesses.   Thus, to the extent Merrill Lynch's Motion to Compel seeks an Order compelling the Trustee to obtain additional information from witnesses to respond to its interrogatories, the Motion to Compel is denied.

      2.   <u>The Trustee Must Provide Some Information About the Jet Network Hard Drive</u> - The Trustee stated in his General Objections that he has possession of a Jet Network hard drive containing 185 gigabytes of data.   The Trustee objects to searching the electronically stored information ("ESI") contained on the hard drive unless the Defendants pay the estimated $60,000 search cost. This issue was raised originally by the Segraves in their Motion to Compel, but the Segraves have chosen to defer their request for the Trustee to search for information on the hard drive.   Merrill Lynch is persisting in its request, arguing that (1) the Trustee has not met his burden of shifting the cost to the Defendants; and (2) the Trustee presumably has conducted some review of the data in the hard drive to perform his basic case administration duties.

      For present purposes, without prejudice to later requests, the Court is denying the Motion to Compel the Trustee to conduct a thorough review of the ESI to respond to Merrill Lynch's

interrogatories.  However, the Trustee will be required to furnish a statement (1) indicating whether the ESI has been reviewed for any purpose in Jet Network's bankruptcy case, or in the associated adversary proceedings; and (2) if the ESI has been reviewed, providing a description of the types of information on the hard drive.

### Issues Specific to Individual<br>Merrill Lynch Interrogatories

After consideration of the objections and arguments regarding specific interrogatories, the Court rules as follows:

Interrogatory No. 7 - This interrogatory asks the Trustee to "[i]dentify any sources from which you have already claimed or obtained compensation for your alleged damages ..."  The Trustee's objection is sustained and the Motion to Compel is denied.  The Trustee has stated that he has not claimed or obtained compensation from any other sources for the damages allegedly caused by Merrill Lynch.  To the extent Merrill Lynch believes that recoveries obtained from other sources are relevant, all of the adversary proceedings filed by the Trustee and the terms of any settlements are matters of public record.

Interrogatory No. 10 - This interrogatory asks the Trustee to detail all communications between Jet Network and Merrill Lynch. The Trustee's objection is sustained.  The key witnesses have been identified and details of the communications should be obtained from documents or the depositions of the witnesses.

19

Interrogatory No. 12 - Merrill Lynch seeks information regarding any agreements between Jet Network and any Defendant. The Trustee's objection is overruled and the Motion to Compel is granted in part.  The Trustee shall produce any written agreement in his possession between Jet Network and any Defendant relating to the subject matter of this proceeding.

Interrogatory Nos. 15 and 16 - These interrogatories seek information regarding agreements between Cauff and Jet Network (No. 15) and Cauff and Jet First (No. 16).  The Trustee's objection is overruled and the Motion to Compel is granted in part.  The Trustee shall produce all written agreements in his possession between Cauff and either Jet Network or Jet First.

Interrogatory No. 21 - Merrill Lynch asks the Trustee to identify all meetings, conversations, negotiations or planning sessions that took place concerning the New Business Model.  The Trustee's objection is sustained and the Motion to Compel denied. Details regarding the various meetings and negotiations should be reflected, in part, in the documents and can and should be fleshed out in depositions.

## Sanctions

Rule 37(a)(5), Fed.R.Civ.P., applicable in this proceeding under Fed.R.Bankr.P. 7037, provides for the award of attorneys fees to the moving party if a motion to compel is granted unless

> (i) the movant filed the motion before attempting in good faith to obtain the

> disclosure or discovery without court
> action;
>
> (ii) the opposing party's nondisclosure, response, or
> objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses
> unjust.

As applied here, the Court finds that several objections asserted by Trustee's counsel were not substantially justified. These include the Trustee's answers directing the movants to judgments and findings in the N.J. Case, refusing to initially provide answers based on information known by the Trustee's attorneys, and objecting, without cause, to Merrill Lynch's damage interrogatory (Interrogatory No. 3). Although the Trustee later withdrew his objection to Interrogatory No. 3, the objection never should have been made since a computation of damages is a disclosure specifically required under Rule 26(a)(1)(A)(iii), Fed.R.Civ.P.

The Court reserves ruling on the amount of the sanctions. There were some bona fide issues in dispute so the Court will be awarding fees to Merrill Lynch and the Segraves only for some of the time spent in preparing and arguing their respective Motions to Compel. Rather than engaging in that analysis now, the Court will reserve on the amount with a caution to the Trustee and his counsel that further sanctions will be imposed if the Trustee does not comply with the letter and spirit of this Order.

Based upon the foregoing, it is –

**ORDERED** as follows:

1.     The Segrave Motion to Compel and Merrill Lynch Motion to Compel are granted in part and denied in part, as more fully described in this Order.

2.     Pursuant to Rule 33(a)(1), Fed.R.Civ.P., applicable to this proceeding under Fed.R.Bankr.P. 7033, leave of Court is granted to allow the Segraves and Merrill Lynch to propound more than 25 interrogatories.  More specifically, the Court is authorizing the Segraves to propound all 35 interrogatories, including all subparts, contained in Segraves' Combined First Set of Interrogatories to the Trustee and authorizing Merrill Lynch to propound all 46 interrogatories contained in its First Set of Interrogatories to Plaintiff.

3.     The Trustee shall answer the previously unanswered interrogatories propounded by Segrave and Merrill Lynch consistent with the terms of this Order.

4.     The Trustee shall produce the 10 boxes of documents described earlier as the Relevant Merrill Documents.  The Trustee shall not be required to separately identify which documents support particular allegations in the Second Amended Complaint or separately identify which of the documents relate to other specific interrogatories propounded by any of the Defendants.

5.     The Trustee shall provide the better answers and further production required by this Order by <u>August 30, 2012</u>.  The supplemental answers shall include the required information about

the ESI, as described in more detail earlier in this Order.

6.    The Court will conduct a Status Conference in this proceeding on **September 27, 2012**, at **2:30 p.m.**, at the U.S. Bankruptcy Court, 51 S.W. First Avenue, Courtroom 1406, Miami, FL 33130.

7.    Unless any party files a written objection by <u>August 6, 2012</u>, the undersigned judge will invite the judge presiding over the N.J. Case, Judge Ann McCormick, to participate in the Status Conference by telephone.  The purpose of the Status Conference will be to discuss future discovery procedures and deadlines, including deposition schedules, and to coordinate further discovery in this proceeding with discovery in  the N.J. Case.


                                    ###

COPIES FURNISHED TO:

Steven I. Silverman, Esq.
Bennett Falk, Esq.
James H. Fierberg, Esq.

The Honorable Ann McCormick
Superior Court of New Jersey
Middlesex Division (via email)

23